## Shaw *versus* the City of Allegheny.

1. Under the Act of February 27th, 1860, P. L., 85, the lien of taxes in the city of Allegheny is divested by a sheriff's sale of the real estate upon which the taxes are levied, whether the fund arising from said sale be sufficient to pay the taxes or not.

2. A tax payer who has invoked the aid of a court of equity in vain, to restrain the collection of a tax by a sheriff's sale of the real estate taxed, the lien of which has been divested by a prior sheriff's sale does

[Shaw v. City of Allegheny.]       •

not become a volunteer in the payment of said tax. He may therefore maintain an action to recover the tax thus paid under protest.

3. Union Insurance Co. v. The City of Allegheny, 5 Outerbridge, 250, distinguished.

4. Per STERRETT, J. The practice of unduly speeding causes through courts of original jurisdiction and disposing of them sometimes without any, and often, as in this case, without "full consideration," for the purpose of bringing them into this court, is a growing evil that ought to be corrected. According to the theory of our jurisprudence, the parties litigant, as well as the appellate court, are entitled in every case to a full consideration and deliberate judgment of the court below.

November 16th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas No 2, of *Allegheny county* : Of October Term, 1886, No. 223.

This was an action of assumpsit by W. A. Shaw against the City of Allegheny to recover the amount of taxes paid by him to said city under protest.

The plaintiff filed the following affidavit of claims which, by agreement of parties, was submitted to the court, WHITE, J., as a case stated.

W. A. Shaw, the plaintiff, being sworn, saith that the defendant, the city of Allegheny, a municipal corporation under the laws of the state of Pennsylvania, is indebted to the plaintiff in the sum of $210.89, with interest thereon from July 9th, 1879, and in the sum of $272.45, with interest from October 10th, 1879, together, at the date of the making of this affidavit, aggregating the sum of $652.12, for which sum with interest from this date and costs of suit, plaintiff claims judgment against the defendant.

The facts upon which plaintiff bases his right to recover the above sums of money are substantially as follows, viz:

*First.* In the month of July, 1878, plaintiff became the owner in fee of a piece of land containing about four acres, situate in the 7th ward of the city of Allegheny (the corporation defendant) in Allegheny county, Pennsylvania, at a sheriff's sale thereof, made upon the 5th day of July, 1878, by the sheriff of Allegheny county, Pennsylvania, upon a *levari facias* issued at No. 145 of July Term, 1878, in the Court of Common Pleas No. 2, of said county, upon a *scire facias* at No. 412 of October Term, 1876, in said court, issued upon a mortgage covering said land made by one Francis Hartmeyer, the then owner in fee, to one Isaac M. Pennock for the sum of $10,000, dated and executed the 8th day of November, 1875, and recorded the 17th day of November, 1875,

in Mortgage Book, vol. 212, page 139, in the Recorder's office for the county of Allegheny, and owned by the plaintiff at the time of said sale, the plaintiff having purchased said property at said sale for $50, which sum was applied to payment of costs. The plaintiff's sheriff's deed being duly acknowledged in Court of Common Pleas No. 2, aforesaid, on the 13th day of July, A. D. 1878, since which time up till lately, and within the last three months the plaintiff has been the owner in fee, and in the actual possession of the piece of land aforesaid.

*Second.* On the 5th day of April, 1879, the city of Allegheny through its treasurer, David Mac Ferron, and its solicitor, Wm. B. Rodgers, under Sec., 6 of Act of Apr., 14, 1863, filed a claim of $173.92 at No. 4 of April Term, 1879, in the Municipal Lien Docket of Allegheny city, Common Pleas Court No. 2 of Allegheny county; said claim being according to the certificate of the city treasurer filed therein for taxes assessed on Dr. Frank Hartmeyer for the year 1878, and which had been returned to said treasurer by the ward collector as uncollectible for want of goods and chattels. The items of said claim, as stated therein, are as follows, viz: ·

| | |
|---|---:|
| City taxes, | $ 58.70 |
| Park taxes, | 7.00 |
| Sewer taxes, | 11.88 |
| Poor taxes, | 14.68 |
| School taxes, | 36.69 |
| School building taxes, | 36.69 |
| Five per cent., | 8.28 |
| | $173.92 |

Said claim was filed for taxes which had been assessed and levied by the city of Allegheny prior to March, 1878, for the year 1878, against the property of said Dr. Frank Hartmeyer, afterwards purchased by plaintiff at sheriff's sale, as aforesaid, and on the day of filing of said claim, judgment thereon was entered in the case comformably to law for the amount claimed, to wit: $173.92 against said Hartmeyer, and afterwards on July 19th, 1879, an execution thereon was issued, and the property aforesaid of this plaintiff, and which had formerly been the property of said Dr. Frank Hartmeyer, levied upon by the sheriff of Allegheny county, and advertised for sale on the first Monday of July, 1879, the costs of which judgment and execution amounted to the sum of $36.95.

*Third.* Dr. Frank Hartmeyer had also, as was alleged by the defendant, the city of Allegheny, become similarly delinquent

[Shaw v. City of Allegheny.]

in the payment of taxes on said property for the year 1877, amounting to $225.34. The items of said claim, as stated therein, are as follows :

| | |
|---|---:|
| City tax, | $ 73.38 |
| Water rent, | 28.25 |
| Poor tax, | 18.35 |
| School tax, | 36.69 |
| School building tax, | 36.69 |
| Park tax, | 7.00 |
| Sewer tax, | 14.25 |
| Five per cent., | 10.73 |
| | $225.34 |

For those taxes the city of Allegheny instituted proceedings as above in the cases of the taxes for the year 1878, by filing claim in the said Court of Common Pleas No. 2 of Allegheny county, entering judgment thereon, issuing executions and levying upon the property aforesaid. The claim being filed September 16th, 1879, for $225.34 at M. L. docket No. 6 of October Term, 1879, judgment entered against said Hartmeyer for said sum of $225.34, and execution issued same day and plaintiff's same property as aforesaid levied upon and advertised for sale on the first Monday of October, 1879, the costs of which judgment and execution amounted to the sum of $47.45. Plaintiff asks that the above two claims filed by the city of Allegheny and the whole records thereof, and of all the proceedings thereon had, be considered and treated as a part of this affidavit, as fully as though certified copies thereof had been appended hereto as part hereof.

*Fourth.* As soon as the plaintiff became informed of the existence and pendency of the above legal proceedings instituted by the city of Allegheny against his (plaintiff's) property aforesaid, on the judgments aforesaid, against said Dr. Hartmeyer, the knowledge of which, in both cases, came to him accidentally through his counsel observing the sheriff's sales as advertised in the Pittsburgh papers, he (the plaintiff) claiming that the said property was not liable for any of said taxes, because their lien was divested by said sale, endeavored by pursuasion to have the Allegheny city authorities and their attorney discontinue said proceedings and remove the said judgments from the record, but this they refused to do ; and thereupon he at once filed bills in equity against said city of Allegheny, its treasurer and attorney, and the sheriff of Allegheny county, praying for the necessary relief and injunction restraining them from their proposed sale. The bill for

5 AMERMAN—4

the first tax above recited being filed July 2d, 1879, at No. 637, July Term, 1879, Common Pleas No. 2, and that for the second tax recited being filed October 2d, 1879, at No. 842, October Term, 1879, Common Pleas No. 2, said bills are still pending (which said bill in equity and the whole record of said two cases plaintiff asks may be regarded as a part of this affidavit, as fully as though certified copies thereof had been appended· hereto). In each of said cases the Court of Common Pleas No. 2, after having refused to grant an injunction, and on or about the last day on which said sheriff's sale could be had, the city of Allegheny persisting in going on with the same, the plaintiff paid the two judgments aforesaid together with the costs thereon ; the first judgment with costs amounting to $210.95 being paid July 9th, 1879, and the second with costs amounting to $272.45 being paid October 10th, 1879.

*Fifth.* Said payments were both made in the sheriff's office of Allegheny county, Pennsylvania, and were made in both cases on the executions issued as aforesaid to the sheriff of Allegheny county, and in the presence of W. B. Rodgers, Esq., the attorney of the city of Allegheny who had charge of said writs, and both payments were made under solemn protest of plaintiff, to both said sheriff and the attorney of the city of Allegheny, and after the payments aforesaid the city of Allegheny received the said taxes and interest, and the amounts paid for costs were paid out by the sheriff to the proper persons and places to which they were applicable.

*Sixth.* Plaintiff says he made the payments aforesaid under protest as aforesaid, and he being advised by his counsel, learned in the law, (Mr. Cummings) that although he (the counsel) thought said judgments and legal proceedings of the city of Allegheny could not affect the title as aforesaid of the plaintiff, yet it might, and that it certainly would cast a serious cloud upon the same, as the question of whether such a tax sale would divest such a title as plaintiff had under the mortgage sale aforesaid was, as counsel believed, as yet undecided by either the courts of Allegheny county or the Supreme Court of the state of Pennsylvania.

Plaintiff further says that he would have brought this suit long prior to this date but for the fact that negotiations have been going on until within the last few months between him and the defendant looking to an amicable settlement by the refunding or repaying him by the city of Allegheny of his said claim, with fair prospects, as plaintiff believed, of success; which negotiations have now failed.

Upon these facts, as set for in this affidavit, all of which plaintiff avers are incontrovertible by the defendant, and the

[Shaw v. City of Allegheny.]

law under these facts, plaintiff claims judgment for said sum of $652.12 with interest from this date and costs of suit.

The court filed the following opinion directing judgment to be entered for the defendant.

By agreement of counsel the facts set forth in the affidavit of claim are to be considered as a case stated, and it is desired to have the case decided without delay, so as to get it before the Supreme Court this Term. The late day when it is submitted (October 22d, and that without argument) makes it impossible for the court to give the case a full consideration. We, therefore, rule the case in harmony with our rulings on the application for an injunction, without saying more.

And now, October 23d, 1885, after consideration of the case stated as set forth in the affidavit of claim, and the agreement of counsel filed in connection therewith, the question of law, to wit: the liability of the defendant to pay the plaintiff the sum claimed on the facts stated, is decided in favor of the defendant, and judgment is ordered to be entered for defendant on the case stated.

Judgment was accordingly entered for the defendant, whereupon the plaintiff took this writ and assigned for error the action of the court in directing judgment to be entered for the defendant.

*W. S. Purviance*, for plaintiff in error.—The present case is clearly distinguishable from the case of The Union Insurance Co. *v.* Thelerly, 5 Out., 255. We do not ask for a reversal of that case. There the party had not had his day in court and he was held to be a volunteer for that very reason; here the plaintiff had his day in court, had done all in his power to protect her rights, and paid only when compelled to do so to save his property from damage by a cloud about to be cast on his title. He is not a volunteer: Railroad Co. *v.* Commissioners, 8 Otto, 544; Preston *v.* Boston, 12 Pick., 14; Peebles *v.* City of Pittsburgh, 5 Out., 308.

*W. B. Rodgers*, for defendant in error.—1. The plaintiff places his right to recover here upon the fact that he filed two bills in equity in the Court of Common Pleas No. 2, in which he alleged that the lien of the taxes which he seeks to recover back in this action was divested by the sheriff's sale to him, and asked for a preliminary and final injunction and general relief.

Undoubtedly under these bills, if the lien of the taxes was divested, there could be decrees against the city for the refunding of the taxes received: Mason's App. 20 P. F. S., 28.

But these bills are still pending. These must first be pro-

ceeded with to final determination: Glunz *v.* Kauffman *et al.,* 7 Phila., 459; Penn. Bank *v.* Hopkins, 2 Atlantic R., 85; Head *v.* Maloney, 1 Amerman, 99; Smith *v.* McIver, 9 Wheat., 533; Shelby *v.* Bacon, 10 How., 56.

The lien of these taxes were not divested by the sheriff's sale. There can therefore be no recovery: Duffey *v.* Phila., 42 Pa. St., 192; Harrisburg *v.* Orth, 9 W. N. C., 121.

Mr. Justice STERRETT delivered the opinion of the court, January 3d, 1887.

It is at least doubtful whether we should consent to review a perfunctory judgment such as this appears to be by the admission of the learned judge who entered it. In the brief opinion accompanying the record he says: "By agreement of counsel, the facts set forth in the affidavit of claim are to be considered as a case stated, and it is desired to have the case decided without delay so as to get it before the Supreme Court this term. The late day when it is submitted, (October 22d) and that without argument, makes it impossible for the court to give the case a full consideration."

The practice of unduly speeding causes through courts of original jurisdiction and disposing of them sometimes without any, and often, as in this case, without "full consideration," for the purpose of bringing them into this court, is a growing evil that ought to be corrected. According to the theory of our system of jurisprudence, the parties litigant, as well as the appellate court, are entitled, in every case, to a full consideration and deliberate judgment of the court below.

Waiving, in this case, the doubt above expressed, the agreement of counsel in the nature of a case stated presents for consideration two general questions, which, as we interpret the agreement, are to be disposed of on their merits and without regard to technicalities: 1st. Whether the taxes which plaintiff alleges he was compelled, by stress of legal process, to pay, and which he now seeks to recover, continued to be a lien on the property after he acquired title thereto by purchase at sheriff's sale in July, 1878? 2d. Whether, under the circumstances, the payment of the taxes and costs to prevent sale of the property by the sheriff was, in the legal sense, a voluntary payment?

The Act of February 27th, 1860, (P. L. 85,) relating to the lien of municipal taxes in the city of Allegheny, declares "such liens shall have priority over and be fully paid and satisfied before any lien whatever (except other taxes) on said real estate." The Act of April 14th, 1863, relating to the collection of the taxes, provides that if they cannot be collected for want of goods and chattels on which to levy, the receiver of taxes or

treasurer shall certify the fact to the city solicitor whose duty it shall be to file said certificate in the office of the prothonotary, and " he shall enter the same on the judgment docket as judgments are entered, and a writ of *fieri facias* shall forthwith be issuable thereon, by virtue of which the sheriff . . . . . shall levy upon and sell the real estate upon which said taxes have been assessed, . . . . . which sale shall vest in the purchaser of said real estate, all the right, title and interest of the defendant in said writ."

The taxes in question for 1877 and 1878, having been assessed while Dr. Hartmeyer owned the property and prior to the sheriff's sale, under which plaintiff acquired title, were of course liens thereon at the time of the sheriff's sale. According to the well settled rule, as to the divestiture of liens by judicial sales, it cannot be doubted that these tax liens, except perhaps the " Park tax," were divested by the sale on execution against Dr. Hartmeyer, and the lien creditors were remitted to the proceeds sale for payment of their respective claims. If the property was sold for a sum insufficient to pay the tax liens, it was the fault of the collector or receiver of taxes, whose duty it was to guard the interest of the city and see that it was bid up to a sum at least sufficient to pay them. But, the result was that plaintiff, as purchaser at the sheriff's sale, acquired the property divested of the tax liens.

The facts, bearing on the second question, are substantially these : Several months after plaintiff acquired title and took possession of the property, certificates were filed under the Act above quoted, and without notice to him, judgments were entered for the taxes of 1877 and 1878, as though the liens therefor had not been divested. Plaintiff's property having been levied on and advertised by the sheriff, he appealed to the equity side of the court for relief, but it was denied, and he was thus compelled either to submit to a sale of his property, by which his title thereto might be imperiled, or pay the taxes and costs. On the eve of the sale he chose the latter alternative and paid the city's unjust demand under protest. In a legal sense, was this a voluntary payment? We think not. In Union Insurance Company v. City of Allegheny, 101 Pa. St., 250, 257, it is said of the Insurance Co., which was similarly circumstanced, except that it did not apply to the court for redress, that " by application to the equitable powers of the court, or by bill in equity, execution might have been stayed and the claim removed from the record." That is just what plaintiff in this case endeavored to do, but without success; and therein is the distinction between that case and this. Relief, in the form suggested in that case, was asked, but it was refused, as we think, erroneously ; and plaintiff was com-

pelled to choose one of the two alternatives above mentioned. If there is anything, against which equity should relieve, it is an act of injustice and oppression, such as the city was proceeding to commit by exposing plaintiff's property to sale on liens which had been previously divested by sheriff's sale.

It has been contended by defendant in error, that having applied for an injunction to restrain the city from proceeding to sell his property, plaintiff was bound to pursue that remedy to the exclusion of every other. In view of the refusal of the court to grant the relief he was entitled to, we are not prepared to say he was; but, aside from that, we do not understand that any such technical question is presented by the case stated.

Plaintiff's counsel agreed at bar to relinquish his claim for amount of "Park taxes" paid by him, on the ground that the liens therefor were not divested by the sheriff's sale. These amount in the aggregate to $14.00. For the amount of the remaining taxes, the lien of which was undoubtedly divested, aggregating $469.34, including costs paid by him, plaintiff is entitled to judgment.

> Judgment reversed, and judgment is now entered, on the case stated, in favor of plaintiff and against defendant for four hundred and sixty-nine dollars and thirty-four cents, with interest from July 1st, 1885, and costs.