# Broad and Sansom Realty Co., Appellant, *v.* Fidelity Building Corp.

*Landlord and tenant—Lease—Construction of lease—Additional liability on tenant—Taxes—Assessments—Act May 20, 1913, P. L. 265.*

1. It is a general principle in the construction of leases that additional liability will not be imposed on the tenant unless it is clearly within the provisions of the lease.

2. The word "assessed" as used in Pennsylvania taxing statutes, means a certain sum of money, fixed under a given rate on property valuation, due and payable as taxes.

3. It is the assessment that makes the taxes and fixes the time when they become due and payable.

4. The Act of May 20, 1913, P. L. 265, fixes the date of assessment as the date when taxes are payable.

5. Where a lease for twenty years from March 1, 1922, provides that the lessee shall pay, on or before August 31st, all taxes assessed for every year during the term, and the lessor in the exercise of a right reserved terminates the lease on March 1, 1927, the tenant is liable to pay two-twelfths of the taxes assessed on January 1st for the year 1927.

Argued December 8, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 309, Jan. T., 1927, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1925, No. 5789, for defendant on question of law raised by affidavit of defense, in case of Broad & Sansom Realty Co. v. Fidelity Building Corporation. Affirmed.

Assumpsit to recover money alleged to be due under terms of lease. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on question of law raised by affidavit of defense. Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*J. M. Ewing*, of *Saul, Ewing, Remick & Saul*, with him *Earl G. Harrison* and *Wolf, Block, Schorr & Solis-Cohen*, for appellant.—There is no warrant in the lease for apportioning the payment of 1927 taxes and water rent.

The cancellation clause following closely after the provision regarding the payment of taxes and water rent, shows apportionment for 1927 was not contemplated.

Since the lease contains no express provision for apportionment in 1927, the lessor's set-off against the sum of $150,000 to which lessee became entitled on cancellation has the effect of imposing on the lessee a burden

not expressly placed on it by the terms of the lease: Catawissa R. R. v. R. R., 255 Pa. 269.

Liability under the lease for the 1927 taxes and water rent had not accrued against the lessee on March 1, 1927, which was the date lessor's cancellation became effective, and hence the lessor had no right to charge the lessee with any portion thereof: Garrett v. Dewart, 43 Pa. 342; Borie v. Crissman, 82 Pa. 125; Evans v. Lincoln Co., 204 Pa. 448.

Any doubt or uncertainty as to the landlord's rights under the lease must be resolved in favor of the lessee: McClintock v. Explosives Co., 260 Pa. 191; Bornstein v. Salerno, 285 Pa. 507; Com. v. R. R., 27 Pa. 339; Tustin v. Coal & Iron Co., 250 Pa. 425; Lenox Coal Co. v. Coal Co., 265 Pa. 572; Phila. v. Coal Co., 290 Pa. 87.

*F. B. Bracken,* with him *W. James MacIntosh,* for appellee.—That the liability imposed on the lessee in the present case to pay taxes until the termination of the lease must be held to have arisen when the taxes were assessed, although option was given to defer the payment until August 31st following, is supported by the case of Wall, Exrx., v. Hess, 232 N. Y. 472: Welch v. Phillip, 224 Mass. 267; and Richardson v. Gordon, 188 Mass. 279.

It is a fundamental rule in the interpretation of agreements that we should ascertain the prime object and purpose of the parties, and, in case of ambiguity produced by its minor provisions, the latter should, if possible, be so construed as not to conflict with the main purpose.

OPINION BY MR. JUSTICE KEPHART, January 3, 1928:

Plaintiff leased from defendant the premises between Walnut and Sansom Streets on Broad Street, Philadelphia, for twenty years, from March 1, 1922, under a lease, the essential parts of which are as follows: "The

Lessee agrees to pay as rental: (a) The sum of two hundred and sixty-five thousand dollars ($265,000) per annum in monthly installments of $22,083.33......(b) On or before the '31st day of August, 1922, the Lessee agrees to pay ten-twelfths (10/12) of the amount of the taxes and water rent assessed against the leased property for the year 1922 and for every year thereafter until the termination of this lease, except the year 1942, the Lessee agrees to pay, on or before the 31st day of August, the amount of taxes assessed against the said premises; and on or before the 31st day of July in each and every year, except for the year 1942, the entire amount of the water rent assessed against the said property. For the year 1942, the Lessee agrees to pay on February 28, 1942, two-twelfths (2/12) of the taxes and water rent assessed for that year...... Any provision in this lease to the contrary notwithstanding, the Lessor may terminate this lease on the first day of March, 1927, upon the payment to the Lessee of the sum of one hundred and fifty thousand dollars ($150,000) in cash; provided, however, that in the event of the desire of the Lessor to cancel......, the Lessor shall have given at least eight months' written notice."

The lessor gave due notice that the lease would be terminated on the first of March, 1927, indicating its readiness to pay the sum of $150,000, provided the taxes and water rent for January and February of 1927 were paid. Claiming the right to deduct the sum of $21,-342.50, representing two twelfths of the taxes and water rent for the year 1927, it paid $128,657.50, which was accepted by appellant without prejudice to the lessee's right to sue for the amount deducted. The court below sustained a statutory demurrer to the statement of claim. Plaintiff appeals.

It is lessee's contention that the lease did not require the payment of taxes and water rent for the two months of the year 1927, nor did it provide for apportionment

of these items in that or any other year excepting 1922 and 1942. Taxes and water rents were to be paid in lump sums and not split into monthly payments. August 31st and July 31st were fixed as the dates taxes and water rent should be paid and when the liability accrued. The lessor, by terminating the lease on March 1st, cancelled these obligations, there being no liability for taxes and water rent at that time. To read the lease otherwise would place an additional burden not contemplated by its express terms. It is a general principle in the construction of leases, that additional liability will not be imposed on a tenant unless it is clearly within the provisions of the lease: Catawissa R. R. Co. v. Philadelphia & Reading R. R. Co., 255 Pa. 269; 36 C. J. 114. Did the lease oblige the plaintiff to pay taxes and water rent on the leased property for the year 1927?

The time fixed for the payment of the taxes was on or before the 31st day of August, and water rent July 31st. The lease reads: "taxes and water rent assessed against the leased property......for every year" shall be paid "on or before." The words "on or before" must be read in connection with "assessed" and mean that these items were due and payable when assessed.

Assessed, as used in our taxing statutes and as here used, means a certain sum of money, fixed under a given rate on property valuation, due and payable as taxes. Taxes cannot become due until they have been assessed; it is the assessment that makes the taxes and fixes the time when they become due and payable: Laird v. Heister, 24 Pa. 452; Heft v. Gephart, 65 Pa. 510; McDermott v. Hoffman, 70 Pa. 31. "The work of calculating carrying out the amount or sum due on each [is] merely clerical, and could be done at any time when anybody might wish to pay the tax...... The land was made debtor by being returned assessed and valued and the rate per cent fixed": Heft v. Gephart, supra, p. 519. These references are to unseated land, but the principle applies here. As to seated land,

the Act of May 21, 1913, P. L. 285, fixes the date of assessment as the date when taxes are payable: Ellis v. Houseknecht, 57 Pa. Superior Ct. 55. In Philadelphia, taxes are generally assessed and become due the first of each year, although the accounts are not made up until some time later, and no penalty is imposed until after August 31st, now until after June 30th.

It is the use of the word "assessment" in conjunction with the time of payment "on or before August 31st" that brings the language of the lease within the rules applicable to the payment of taxes and water rent imposed by the municipality. When these taxes were assessed, they became, under the general law as well as under the law of the lease, due and payable, though they may not be collectible until a later date. August 31st corresponds with the time when a penalty is added by the city for unpaid taxes. It stands for more than that in the lease. It gives the lessor an immediate and effective remedy to enforce collection. Paragraph 7 of the lease provides that, if the rent or any charges therein included as rent shall remain unpaid for five days, then judgment and execution may issue at the suit of the lessor.

The express terms of the lease impose an obligation to pay the taxes for the years between 1922 and 1944 when assessed, which would include the year 1927. The termination clause in no way interfered with the clause requiring rentals to be paid before the date of cancellation. The lessee was, therefore, liable, on the principles above stated, for taxes and water rent for the year 1927, unless the lease contemplated apportionment.

The lease required certain sums to be paid as rent: (1) an annual fixed sum of $265,000, broken into twelve monthly payments; (2) taxes and water rent for every year until the termination of this lease, except the first and last years when there was to be an apportionment. It is clear the general scheme of the lease contemplated an earlier ending of the term than that of 1942, and

its general plan as to, rent (whether taxes, water rent or cash) indicated an intention to apportion. This is the plain logic of the lease, considering the provisions for payment of rent, cancellation and apportionment of taxes and water rent at the beginning and end of the term. When the lease was terminated under the optional provision, it had the effect of moving the termination date of 1942, with all its incidents, back to 1927. This means that plaintiff became liable for two-twelfths (2/12) of the taxes and water rent, payable February 28th.

The judgment of the court below is affirmed.